8635

MIMS v. ATLANTIC COAST LINE R. R. CO.

RAILROADS—ISSUES.—When there is evidence that a switch engine was run across a street in a city at a reckless rate of speed, greater than permitted by the rules of the company without a proper look-out and without warning, and that these acts were the proximate cause of the death of an employee on the tracks and the defense introduces evidence tending to show the injured person was guilty of gross contributory negligence in attempting to cross the track,

the issues should have been sent to the jury and not determined by the Court on motion for nonsuit.

*Distinguished from Drawdy* v. *Ry.,* 78 S. C. 375.

Before SPAIN, J., Richland, April, 1912.    Reversed.

Action by Lizzie Mims, administratrix of Jno. J. Mims, against Atlantic Coast Line Railroad Company and S. B. Divine.    Plaintiff appeals.

*Messrs. Nelson, Nelson & Gettys* and *John H. Clifton,* for appellant, cite: *On main issue:* 78 S. C. 63; 90 S. C. 462; 93 S. C. 543, 263; 47 S. C. 382; 45 S. C. 183; 76 S. C. 163; 76 S. C. 378; 78 S. C. 547.

*Messrs. Barron, Moore, Barron & McKay,* contra, cite: *Res gestae:* 77 S. E. 721; 86 S. C. 103.    *On the main issue:* 85 S. C. 355; 94 S. C. 143; 78 S. C. 377; 81 S. C. 193.

August 9, 1913.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY.    This is an action by the plaintiff, as administratrix of John J. Mims' estate, to recover damages against the defendants, for the benefit of herself and children, on account of the death of her husband, alleged to have been caused by the joint and concurrent negligence and recklessness of the defendants.

The allegations of the complaint, material to the question under consideration, are set forth in the 4th, 5th, and 6th, paragraphs thereof, which are as follows:

4th. "That the defendant, S. B. Divine, is a citizen of the State of South Carolina, who was at the time hereinafter mentioned, a servant and employee of the defendant, Atlantic Coast Line Railroad Company, being engineer, engaged in running an engine of the defendant, used for switching and other purposes on defendant's yard at said Sumter.

5th. "On information and belief, that on or about the 19th day of December, 1910, while plaintiff's intestate was crossing Harvin street, a public street of the said city of Sumter, defendant, Atlantic Coast Line Railroad Company, carelessly, negligently, recklessly, wilfully and wantonly, ran backwards one of its engines and tender, on one of its tracks across said Harvin street, at an excessive and reckless rate of speed, and in violation of its own rules and regulations as to speed, and without having any one on the rear of said engine or tender, to keep a lookout in the direction, in which said engine and tender were being run, and in violation of its own rules, and without blowing the whistle or ringing the bell of said engine, and without giving any signal or warning whatsoever of its approach, as required by law, although, where the tracks of said defendant cross said Harvin street, is a public crossing in said city of Sumter, and carelessly, negligently, recklessly, wilfully, and wantonly ran into and over plaintiff's intestate, crushing him beneath the wheels of said tender and causing his death.

6th. "On information and belief, that the defendant, Atlantic Coast Line Railroad Company, knew or should have known, that its codefendant, S. B. Divine, was a careless and reckless engineer, nevertheless, it carelessly, negligently, recklessly, wilfully and wantonly retained the said S. B. Divine, in its employ, as switch engineer, in and about its yards at said Sumter, South Carolina."

The defendants denied the allegations of negligence and recklessness, and set up contributory negligence on the part of John J. Mims, as a defense.

At the close of all the testimony, his Honor, the presiding Judge, granted an order of nonsuit, on the ground "that the only inference to be drawn from the evidence is, that the plaintiff's intestate, John J. Mims, was guilty of gross negligence, which contributed to his injury, as a proximate cause thereof."

The appellant's exceptions assign error in said ruling.

There was testimony tending to show, that the deceased was a car inspector, at the time of his death, and was in the employment of the defendant company, in its yards at Sumter, S. C., that one of his duties, was to inspect all trains upon their arrival in the yards; that at the time of his death, he was going across the yard and tracks, diagonally from a train which was already in the yard, to one which had just arrived, for the purpose of inspecting it; that in going from one to the other, it was necessary for him to cross Harvin street, a much traveled place, and one of the main thoroughfares of the city; that while he was thus discharging his duty, he was killed by collision with a switch engine, within a few feet of Harvin street; that the engine was running backwards without a full shifting crew, and without anyone on the back of the tender, to keep a lookout, at a rate of speed from 15 to 20 miles an hour, which was reckless, and exceeded the rate of ten miles an hour prescribed by the rules of the company; that no signal was given except the blow of the whistle, *after* Mims was struck by the engine; and, when considered in its entirety, there was reasonable ground for the jury to draw from the testimony, the inference that Mims did not know the engine was approaching, until it was in a few feet of him, as his back was turned in that direction.

In fine, there was testimony tending to prove, every material allegation of the complaint, that was put in issue.

After the introduction of testimony by the plaintiff, for the purpose of establishing the facts just mentioned, the defendants offered evidence contradictory thereof, for the purpose of showing, that they were not guilty of negligence or recklessness, and to sustain their defense, that the plaintiff's intestate was guilty of contributory negligence.

If the jury believed the testimony offered by the plaintiff, then it was unquestionably susceptible of the inference, that the injury was the direct and proximate result of negligence or recklessness, on the part of the defendants, and not of

gross negligence on the part of the plaintiff; while on the other hand, if they believe the testimony introduced in behalf of the defendants, *including that which contradicted the evidence offered in behalf of the plaintiff,* then it was susceptible of the inference, that the injury resulted directly and proximately, from the gross negligence of John J. Mims. It was, however, for the jury, not only to determine whether they believed the whole or any part of the testimony introduced by either party, but also to draw the inference therefrom.

The defendants seem to attach much importance to the testimony of L. I. Parrott, then clerk of the Court, who testified, that he heard some one ask John J. Mims, immediately after the injury: "My God, John, how did this thing happen?" and that Mims replied: "I thought I could make," or, "I thought I could cross," or some expression of that kind.

We do not, however, attach the same importance to it, on account of the subsequent testimony of this witness.

The record shows that the following took place subsequently:

Mr. Parrott, recalled:

Mr. Clifton: "In the statement you made as coming from Mr. Mims, you say that there is no absolute degree of certainty, whether he referred to his physical condition or ability to get across the track; you can say which he referred to? Whether he was in such physical condition that he was unable to get across the track, or had the time to get across? What I heard on the grounds, what the person said with reference to his physical condition, impressed my mind with the fact, that it was on account of his physical condition."

It appears from the testimony, that Mims was not then in good health physically, and the statement of the witness, is, that the remarks made by Mims had reference to his physical condition, and not to the question whether he had time to get across, on account of the proximity of the train.

His Honor, the presiding Judge, based his ruling, on the case of *Drawdy* v. *Ry.*, 78 S. C. 375, 58 S. E. 980, which he held to be conclusive of the present case. Upon comparison of the facts in the two cases, it will be found that they are materially different.

It is the judgment of this Court, that the order of the Circuit Court be set aside, and the case remanded to that Court for a new trial.