## 9051

### MIMS v. ATLANTIC COAST LINE RAILROAD CO.

(85 S. E. 372.)

PLEADINGS. EVIDENCE. MASTER AND SERVANT. FEDERAL EMPLOYERS' LIABILITY ACT. RES GESTAE. LAW OF CASE. CHARGE.

1. PLEADINGS—EVIDENCE.—Evidence not pertinent to the pleadings is properly excluded.

2. MASTER AND SERVANT—INJURY TO SERVANT—PLEADINGS AND PROOF—INTERSTATE COMMERCE—FEDERAL EMPLOYERS' LIABILITY ACT.—When the pleadings show facts bringing an action for the death of an employee within the Federal Employers' Liability Act (Act June 11, 1906, c. 3076, 34 Stat. 232), it must be tried under that law.

3. MASTER AND SERVANT—DEATH OF SERVANT—PLEADING—AMENDMENT. —Where the complaint, in an action for the death of a railroad employee, averred that he was engaged in intrastate commerce, and there was nothing to show the applicability of the Federal Employers' Liability Act, defendant cannot, on a second trial, after the close of plaintiff's evidence, show, without amending its answer, that deceased was engaged in interstate commerce at the time of his death, for that fact should have been raised by the pleadings.

4. EVIDENCE—RES GESTAE.—Whether testimony offered should be admitted as a part of the res gestae or excluded is within the discretion of the Court.

5. TRIAL—NEW TRIAL—LAW OF CASE.—Where practically the same evidence is presented on a second as upon a former trial, on which the Supreme Court held it error to grant a nonsuit, this ruling became the law of the case, and a renewal of the motion for nonsuit is properly refused.

6. TRIAL—CHARGE.—The reading of extracts from the opinion of the Supreme Court on a former appeal reversing an order of nonsuit in refusing a renewal of such motion on a second trial was not a part of his charge, nor prejudicial to defendant.

Before MEMMINGER, J., Columbia, November, 1913. Affirmed.

Action by Lizzie M. Mims, as administratrix of the estate of John J. Mims, deceased, plaintiff, against Atlantic Coast Line Railroad Company and S. B. Divine, defendants. From judgment for plaintiff, the defendants appeal on the following exceptions:

Exception I. His Honor, the presiding Judge, refused to allow defendant to introduce testimony as follows:

(a) W. B. Pryor (train dispatcher):

"Mr. McKay: State whether or not, from your record, on the morning in question there were trains passing through Sumter, Atlantic Coast Line, from without the State of South Carolina, and trains from within the State of South Carolina, going without the State? Mr. Clifton: We object. The Court: Objection sustained. Mr. McKay: State whether or not that was the case between the hours of 8 and 10 in the morning of that ·day? Mr. Clifton: Same objection. The Court: Objection sustained."

(b) W. F. Flake (flagman, freight train, Sumter to Robbins):

"Mr. McKay: Was A. C. L. 2082 car in that train that morning? Mr. Clifton: We object, irrelevant. He was not injured or killed by train going to Robbins. The Court: Bringing in some interstate commerce; that is ruled out as irrelevant; nothing to do with the case. Mr. McKay: Was

FOOTNOTE.—As to the application of the rule of *res judicata* to motions pending action, see note in Ann. Cas. 1914d, p. 196, and in 48 L. R. A. (N. S.) 464. As to constitutionality, application and effect of the Federal Employers' Liability Act, see note in 47 L. R. A. (N. S.) 38 *et sequa.*

that car, A. C. L. 2082, a car filled with cotton and destined to Augusta on this trip? Mr. Clifton: Do not answer. The Court: Irrelevant."

(c) Carroll Brooks (conductor train No. 46):

"Mr. McKay: State whether or not on that date (18th December) you carried certain passengers on mileage from Sumter to Lanes? Mr. Clifton: Do not answer; we object. The Court: Irrelevant; he can not say; that is not defense for killing Mr. Mims in any shape or form. Mr. McKay: Our purpose is to connect this mileage with interstate shipment. The Court: I exclude it as irrelevant."

(d) D. L. Lynch (conductor train No. 83, passing Lanes), as follows:

"Mr. McKay: State whether or not Lanes on this day in question, you picked up three passengers, three mileage passengers, and carried them to Savannah, Ga.? Mr. Clifton: The mileage itself would be the best evidence; and secondly, irrelevant. The Court: One objection is enough; it is irrelevant. Mr. McKay: You object to this as irrelevant? Have you got your original record with you? A. My report that day. The Court: The original record would not make it relevant. Mr. McKay: It was objected to on the ground of the record. The Court: I sustain the objection on the ground of irrelevancy; does not bear in any way on the defense for killing Mr. Mims, as alleged in the complaint, or stated in the answer."

(e) R. H. Josey (agent at Lanes), as follows:

"Q. State whether or not on that morning, December 19th, 1910, you sold any mileage tickets for train No. 83 for Savannah? Mr. Clifton: We object, irrelevant. The Court: I sustain the objection."

(Witness recalled):

"Q. State whether or not at that time the Georgetown & Western sold or exchanged any mileage over any other railroad? Mr. Clifton: We object on the ground, irrelevant. The Court: Absolutely irrelevant in this case."

(f) G. C. Rumph (baggagemaster on train No. 46), as
follows:

"Q. Is it a fact that on this morning in question you had
a trunk in charge that was to go out of the State of South
Carolina? Mr. Clifton: We object. The Court: Over-
ruled on the same ground. I think you gentlemen have
about exhausted the number of witnesses you may offer on
this point, taking up a vast amount of time."

Mr. McKay: This is the last winess. State whether or
not on this morning in question you had a trunk in charge
checked from Sumter to Savannah? Mr. Clifton: Same
objection.

"The Court: Same ruling. Mr. McKay: Does your
record show that fact? Mr. Clifton: We object. Mr.
McKay: We want to offer the record in evidence. Mr.
Clifton: We object to the record on the ground, irrelevant.
The Court: This case has been in the Court how many
years? How long since the case was started? Mr. Clif-
ton: January, 1911. The Court: After this case has been
passed upon before, an answer put in, and amended answer
allowed, seems to have occurred to counsel that this Court
has no jurisdiction by reason of interstate commerce busi-
ness. I cannot understand that. I have overruled all this
testimony. I am not going to hear any more of it now.
Mr. McKay: You refuse to allow this original record to
go in? The Court: Yes. Mr. Clifton: There is no testi-
mony; it is original. Mr. McKay: He says it is. Wit-
ness: That is my record. Mr. McKay: In your own
handwriting? A. Yes, sir. Mr. Clifton: Had you said
so prior to just now? Mr. McKay: He had. (Identified
W. H. M.) Mr. McKay: Just identified to show we did
offer this. Mr. Willcox: We want that identified as evi-
dence of having offered the record. The Court: You will
save time by putting the record in. Mr. Nelson: This is
the original record, or copy; to make the record straight
for the purposes of appeal. The Court: Yes, no use to

burden the record with a mass of printed documents.   Mr. Clifton : We object to even the identification, on the ground, having been offered and rejected, no necessity to put them in.   Mr. Wilcox: State that was the record that was ruled out.   The Court: You have enough evidence to raise the question, any question you want to make about the U. S. Supreme Court, enough has been offered."

.(g) J. S. Neggs (railway. postal clerk on train No. 46), as follows:

"Q. State if it is not a fact that on December 19th, on that train, you, as, mail clerk, put off at Lanes and Sumter mail destined to points beyond South Carolina? Mr. Clifton: We object.   The Court: I rule that out."

The ruling out of this evidence constituted error in that it was relevant and competent to prove that plaintiff's intestate was engaged in inspecting trains engaged in interstate commerce, and hence that this action falls within the terms of the act of Congress known as the Employers' Liability Act.

Exception II. His Honor, the presiding Judge, ruled that defendant could not prove that the cause herein came within the terms of the Employers' Liability Act, because said act was not pleaded and that the decisions of the Supreme Court of the United States on this point were not binding on the Courts of this State said ruling constituted error in that it is not necessary to plead the act in question in order to raise the issue, and, further, in that the decisions of the Supreme Court of the United States in this regard are governing and controlling on the Courts of South Carolina.

Exception III. His Honor, the trial Judge, refused to allow Dr. Archie China to testify regarding statements made to him by Mims as to the manner in which he was injured.   This constituted error in that said statements were competent as declarations against interest by the interstate principle in whose place administratrix now stands,

the question, objection and ruling of the Court being as follows:

"Q. What did he state to you? Mr. Nelson: We object. The last time it was ruled not part of the *res gestae*. If they want it in as a dying declaration it is not competent; after he was injured, and being to the hospital, the doctor met him. Was this at the hospital? A. As near as I can say, about 50 yards from where he was hurt. Q. How long after the accident? A. Not but a short time. Mr. McLemore: We take the position that not only is the testimony of Dr. China admissible, but it is a declaration of the deceased, and is competent as being part of the *res gestae,* because so closely connected in point of time. We take the further position, any statement made by the deceased is competent from this witness; in an action brought by the administrator for his death, we take the position anything that will be competent in an action brought for his injury would be equally competent in an action brought by the administrator for his death. The Court: I do not think it would be admissible on that ground."

Exception IV. His Honor, the presiding Judge, erred in overruling defendant's motion for direction of a verdict; and should have sustained the same on the ground:

(1) That there was no evidence upon which to base a verdict for punitive damages.

(2) That there was no evidence of actionable negligence.

(3) That the only inference to be drawn from the whole evidence was that the deceased came to his death by reason of his contributory and gross negligence or wilfulness.

Exception V. His Honor, the presiding Judge, erred in holding that he would be in contempt of the Supreme Court if he should grant the motion for direction of verdict in this cause, said cause being for trial *de novo* and different evidence and new witnesses being introduced, the language of the Court objected to being as follows:

"The Court: I think it would be contempt of the Supreme Court to rule in favor of that motion. The Supreme Court sent it back, said the judgment was wrong in so deciding and taking it away from the jury. If I sustained that motion I would be in contempt of the Supreme Court."

Exception VI. His Honor, the presiding Judge, in overruling defendant's motion for direction of verdict, erred in reading to the jury the decision of the Supreme Court in the former case—in that said opinion contained criticisms and conclusions of the evidence of Mr. L. I. Parrott, a witness in the former case, whose testimony the jury had to pass upon, also in the case at bar, and gave conclusions of fact, which in the case at bar were for the exclusive determination of the jury without suggestion or intimation from the Court, the language of the Court objected to being as follows:

"The Court: In passing on that motion, I will read so it will go in the record what the Supreme Court said on this point. The Supreme Court decided in this case that 'there was testimony tending to prove every material allegation of the complaint that was put in issue.' After the introduction of testimony by the plaintiff, for the purpose of establishing the facts just mentioned, the defendants offered evidence contradictory thereof, for the purpose of showing that they were not guilty of negligence or recklessness, and to sustain their defense, that the plaintiff's intestate was guilty of contributory negligence.

"If the jury believe the testimony offered by the plaintiff, then it was unquestionably susceptible of the inference that the injury was the direct and proximate result of negligence or recklessness on the part of the defendants, and not of gross negligence on the part of the plaintiff; while, on the other hand, if they believed the testimony introduced in behalf of the defendants, including that which contradicted the evidence offered in behalf of the plaintiff, then it was susceptible of the inference that the injury resulted directly

and proximately from the gross negligence of John J. Mims. It was, however, for the jury, not only to determine whether they believed the whole or any part of the testimony introduced by either party, but also to draw the inference therefrom. The defendants seem to attach much importance to the testimony of L. I. Parrott, then clerk of Court, who testified that he heard some one ask John J. Mims immediately after the injury— Mr. McLemore: We object to your Honor reading to the jury that opinion about Mr. Parrott, or to the effect of that testimony. The Court: You made the motion before me, and I propose to put my ruling on record, and show why I am making that ruling: 'That he heard some one ask John J. Mims, immediately after the injury, "My God, John, how did this thing happen?" and that Mims replied, "I thought I could make it," or "I thought I could cross," or some expression of that kind.' We do not, however, attach the same importance to it, on account of the subsequent testimony of this witness.

"The record shows that the following took place subsequently:

"Mr. Parrott, recalled:

"Mr. Clifton: Q. In the statement you made as coming from Mr. Mims, you say that there is no absolute degree of certainty whether he referred to his physical condition or ability to get across the track; you can say which he referred to. Whether he was in such physical condition that he was unable to get across the track, or had the time to get across? A. What I heard on the grounds, what the person said with reference to his physical condition, impressed my mind with the fact that it was on account of his physical condition."

It appears from the testimony that Mims was not then in good health, physically, and the statement of the witness is, that the remarks made by Mims had reference to his

physical condition, and not to the question whether he had time to get across on account of the proximity of the train.

His Honor, the presiding Judge, based his ruling on the case of *Drawdy* v. *Ry.*, 78 S. C. 375, which he held to be conclusive of the present case. Upon comparison of the facts in the two cases, it will be found that they are materially different.

It is the judgment of this Court that the order of the Circuit Court be set aside, and the case remanded to that Court for a new trial."

Under that decision, gentlemen, the motion is refused, and those are the grounds upon which I refuse it.

"Mr. McKay: We wish to enter exception."

*Messrs. P. A. Willcox, L. M. McLemore* and *Barron, McKay, Frierson & Moffatt,* for appellant, cite: *Federal Employers' Liability Act supersedes all State law in cases to which it is applicable:* 98 S. C. 197; 223 U. S. 700; 229 U. S. 154, 161; 232 U. S. 383; 233 U. S. 492; 234 U. S. 86; 232 U. S. 248. *The State Court has concurrent jurisdiction:* 210 Fed. 94; 93 U. S. 130; 11 Cyc. 996. *The Federal act need not be pleaded:* 228 U. S. 700; 226 U. S. 569; 229 U. S. 157, 159; 141 N. W. 177, 178; 16 Cyc. 889; 80 S. E. 997, 998; 135 S. W. 874. *This is a jurisdictional question:* 128 N. W. 1; Richey, Fed. Em. Liability Act, p. 133; 42 S. C. 17; 2 Bail. 586; 3 Hill 96. *Declarations of deceased admissible against his administratrix:* 34 S. E. 316, 317; 52 Pac. 81; 68 Am. St. Rep. 344; 91 N. W. 28; 94 Am. St. Rep. 669; 35 Atl. 190; Greenleaf Ev. (14th ed.), secs. 147, 148; 41 L. R. A. 860; Civil Code 3955; 33 S. C. 556; 37 S. C. 42; 60 S. C. 416. *As to negligence: Failure to stop engine when deceased approached track:* 85 S. C. 355. *His own gross contributory negligence:* 78 S. C. 273; 94 S. C. 143. *Remarks in refusing nonsuit:* 81 S. C. 374, 378; 96 S. C. 354.

*Mr. Lucian W. McLemore*, also for appellant, cites the following additional authorities: 116 C. C. A. 156; 196 Fed. 336; 97 S. C. 50; 217 U. S. 91. *Facts showing applicability of Federal statutes do not constitute affirmative defense, and need not be pleaded in answer:* 73 S. C. 507; 51 S. E. 92; 50 S. C. 49; 68 S. C. 512; 51 S. C. 95; 39 S. C. 543; Pomeroy's Code Remedies, secs. 671, 675; 185 U. S. 38; 8 Ga. 1086; 148 S. W. 1099; 179 Fed. 175. *Language used in overruling motion for directed verdict was a charge upon the facts:* 81 S. C. 374; 96 S. C. 354; 99 S. C. 216.

*Messrs. Nelson, Nelson & Gettys*, for respondent, cite: *As to exclusion of evidence:* 40 L. R. A. (N. S.) 684; 149 Iowa 51; 128 N. W. 1; 56 U. S. L. Ed. 624; 160 N. C. 196, and note in 47 L. R. A. (N. S.) 76 and Ann. Cas. 1914c. 171. *Declaration of deceased:* 65 S. C. 267. *Nonsuit:* 95 S. C. 370. *Charge:* 79 S. C. 525.

April 3, 1915.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was an action by plaintiff as administratrix for the benefit of herself and her four minor children to recover damages for the death of her husband on December 19, 1910, caused by the alleged joint and concurrent carelessness, negligence, recklessness, wilfulness and wantonness of the defendants. This is the second appeal in the case. On the first trial at the close of all the testimony his Honor, Judge Spain, granted a *nonsuit*, which, upon appeal, was reversed. The decision on the first appeal is reported in 95 S. C. 370, 78 S. E. 1031. The suit was brought under what is commonly known as the Lord Campbell's Act (Civil Code 1912, sec. 3955). The allegations of the complaint and answer do not show the plaintiff's intestate was engaged in interstate commerce at the time he was killed, and during the time of the first trial, and in the appeal therefrom no

mention is made by the defendants of the act of Congress known as the Federal Employers' Liability Act. (Act Congress, April 22, 1908, c. 149, 35 Stats. 65, U. S. Comp. St. Supp. 1911, p. 1322.) Not only was no mention made of the Federal act during the first trial and appeal although it was as avilable to the defendants on the first trial as the second, but it appears at the second trial the defendants obtained leave over objection of the plaintiff and were permitted to amend their answer by setting up the defense of wilful and gross contributory negligence on the part of the plaintiff's intestate under the South Carolina statute. The second trial was had before Judge Memminger, and a jury, and resulted in a verdict in favor of plaintiff for $16,000.

As soon as plaintiff's case was closed, the counsel for defendants announced that train 46, which plaintiff's intestate was inspecting while killed, was engaged in interstate commerce, and that they would introduce testimony to show that in the inspection of this train and otherwise the plaintiff was engaged in commerce between the States, and consequently the statute under which plaintiff was bringing her case had been suspended by the act of Congress of the United States known as the Federal Employers' Liability Act, April 22d, 1908. The Court refused to allow the defendants at that time under the pleadings to raise this issue and refused to admit any testimony in regard thereto. The Court also refused to direct a verdict in favor of defendants as asked for. After entry of judgment, defendants appeal.

Exceptions 1 and 2 allege error on the part of the presiding Judge in refusing to allow certain testimony, which the appellants contend would show that when plaintiff's 1, 2, 3 intestate was killed he was engaged in interstate commerce, and in refusing to allow testimony which defendants' counsel stated they would offer for the purpose of bringing the case under the Employers' Liability Act, and the remarks of the Judge at that time. His Honor

took the position that the testimony was irrelevant, and not responsive to the pleadings and not an issue in the case. That the case had been passed upon by the Supreme Court and an amendment over objection of plaintiff allowed just before proceeding with the second trial. After the plaintiff's testimony was all in, for the first time it seems to have occurred to the defendants that they wanted to avail themselves of the Federal statute Employers' Liability Act. The facts in every case should be pleaded. Whenever the pleadings show facts pleaded that the case is one that can be tried either under the Federal or State law then the Court can try it under either law. When the pleadings show facts that bring it under the Federal law it must be tried under the Federal law, and when the pleadings show it is brought under the State law it must be tried under that law.

The complaint was filed April 5, 1911, and alleges deceased was killed December 19, 1910, and alleges defendants controlled and operated its railroad in the counties of Sumter and Richland, and cities of Sumter and Columbia, S. C., and it nowhere alleges that the defendants operated its road in any other State than South Carolina, and there is no allegation in the complaint whereby it could be inferred that defendant railroad was engaged in interstate commerce, but the complaint clearly alleges that at the time of the death of the deceased it was engaged in *intrastate* business. The defendants answered without alleging that at the time the deceased was killed while in their employment that he was engaged in the inspection of a car which was engaged in *interstate* commerce. These facts must have been known, or should have been known, to them if they existed. They try the case in 1912 before Judge Spain, defendants obtain a *nonsuit,* which, upon appeal, is reversed, and the case is ripe for a trial before Judge Memminger and a motion to amend answer is made and allowed, and still no effort made to set up this defense and advertise the plaintiff of this defense. It does seem to us that justice and fair

dealing under all of the circumstances of the case should
have been required the defendants if they intended to invoke
the benefits, which they thought would ensue to them under
the act of Congress to plead the facts applicable to bring it
under the act.    It would be an injustice at this stage of the
case to allow this defense.    The plaintiff alleged he was
engaged in *intrastate* commerce when he was killed.    The
first trial showed that he was.    When his Honor, in the
exercise of his discretion, allowing the defendants to amend
their answer permitting them all they asked for, there was
no hint or suggestion that he was engaged in *interstate*
commerce.    If he was, the information was, or should have
been, known to them, and if they desired to raise this issue
they should have set forth such allegations in their answer
as to raise an issuable fact, but this they failed to do, but
knowing that the plaintiff by her pleadings based her case
on the State law, and after a trial under that law and an
appeal without any reference or suggestion even or allega-
tion being made to the Federal Employers' Liability Act or
that the deceased at the time of his injury was engaged in
*interstate* commerce waits until close of plaintiff's testi-
mony in the second trial, and without even seeking to amend
their answer, attempt to bring into the case by introducing
evidence and seek a direction of a verdict upon a ground not
pleaded.    The plaintiff alleges that she has a cause of action
against the defendants and is entitled to a trial either under
the State or Federal law, the pleadings made out a case to
be tried under the State law, and under the pleadings his
Honor was correct in ruling as he did.    It is not neces-
sary to plead either a State or Federal statute, but it is neces-
sary to plead facts which bring it under one or the other,
and when the pleadings show that it was interstate com-
merce the State or Federal Courts try it and Federal law
governs, when the pleadings show it was *intrastate* com-
merce the State law governs.    The defendants should have
pleaded the Federal act or at least such facts as would ren-

der the act applicable, and inasmuch as they did not do so, and the pleadings made out a case based on the State law, the exclusion of the evidence by his Honor complained of was proper as it was not responsive to any issue raised by the pleadings. If there had been an allegation in the answer that brought it within the Federal Employers' Liability Act it would have been controlled by the act, although the provisions may not have been referred to in express terms in the pleadings, and proof would be allowed in the case, but in this case there is no such allegation, and his Honor committed no error, and these exceptions are overruled.

Exception 3 is overruled as we see no error on the part of his Honor, it was not in his Honor's opinion a part of *res gestae* and other witnesses practically testified to the same thing sought to be proved by Dr. China as to what part of the *res gestae* must in a large measure be left to the sound judicial discretion of the trial Judge.

Exceptions 4 and 5 are overruled. The facts in this case were practically the same as in the former trial and on former appeal it was held to be error to grant a *nonsuit* on case made out. This certainly became the law of this case, and a *res adjudicata* as to the points and question presented in the appeal, and his Honor was not in error in refusing the same, and he had sound reason for refusing the same upon the law decided and the evidence developed.

Exception 6 is overruled. His Honor overruled the motion for direction of verdict and assigned his reason therefor, it was not a part of his charge and could not be prejudicial to the defendants. It was not such a judicial indiscretion as was committed by the trial Judge in *Latimer* v. *Electric Co.*, 81 S. C. 374-375, 62 S. E. 438, or in *Irby* v. *Express Co.*, 96 S. C. 354, 80 S. E. 613, or *Stokes* v. *Murray*, 99 S. C. 217, 84 S. E. 33,

but is analogous to the case of *Reardon* v. *Insurance Co.,* 79 S. C. 525, 60 S. E. 1106. All exceptions are overruled. Judgment affirmed.

Mr. Chief Justice Gary concurs in the result and Messrs. Justices Hydrick, Fraser and Gage concur in the opinion of Mr. Justice Watts.