7027

### LATIMER v. GENERAL ELECTRIC CO.

1. MASTER AND SERVANT—NEGLIGENCE—ISSUES.—Upon evidence tending to show servant did not know an electric wire was live and that the master had not warned him, but assured him it was safe, issue of negligence was properly sent to the jury.

2. ASSUMPTION OF RISKS AND CONTRIBUTORY NEGLIGENCE are not conclusively shown by the evidence, nor are they the only inferences of which the evidence is susceptible.

3. CHARGE—NEW TRIAL.—THE TRIAL JUDGE having expressed before the jury during argument on motion, in strong terms, his opinion as to the facts on a vital issue in the case, new trial is granted as for charge on facts.

Before WATTS, J., York, Spring term, 1908. Reversed.

Action by Walker R. Latimer against General Electric Co. From judgment for plaintiff, defendant appeals.

*Messrs. Patterson, Haynsworth & Blythe,* and *W. W. Lewis,* for appellant, cite: *Assurance of no danger does not prevent defense of assumption of risks:* I Lab. on M. & S. 452, 454, 676-9,669-70; 75 S. C., 487; 76 S. C., 416; 72 S. C., 243, 348; 74 S. C., 416; 75 S. C., 487; 2 Joyce on Elec. L., sec. 663-A; 64 S. C., 215. *Judge having expressed opinion on facts, makes charge on facts:* 2 Tread., 692;

15 S. C., 392; 19 S. C., 581; 28 S. C., 255; 73 S. C., 383;
50 S. C., 299; 76 S. C., 200.

*Mr. Geo. W. S. Hart* and *John R. Hart,* contra. The latter cites: *Remark made by Judge during progress of trial is not a charge on facts.* 78 S. C., 502. *Servant does not assume risk of unknown dangers:* 48 S. C., 195; *Elms* v. *Power Co.,* 55 S. C., 100; 72 S. C., 162; 20 Ency., 97; Lab. on M. & S., 1263. *Servant is not guilty of contributory negligence when obeying master beyond his regular employment:* 1 Lab. on M. & S., 1296; 55 S. C., 483; *Gadsden* v. *Power Co.*

September 29, 1908. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff recovered judgment on verdict against defendant for $1,380, as damages for personal injuries resulting from contact with a "live" wire while in the employment of defendant in installing an electrical equipment in Lenora Mills at Yorkville, S. C.

The complaint alleged that the injuries were caused by the negligent and wanton conduct of defendant in several particulars, but plaintiff's case practically narrowed to the question whether defendant breached its duty to plaintiff in directing him to work in a place of great danger, in close proximity to an electrically charged wire, known to defendant, but of which plaintiff was ignorant, without any warning of such danger. Besides a general denial, defendant plead assumption of risk and contributory negligence. Exceptions are now taken to refusal of defendant's motion for a non-suit and for a direction of verdict. These motions were made upon the grounds (1) that there was no evidence of negligence in failing to warn plaintiff; (2) that the evidence showed conclusively that plaintiff assumed the risk; (3) that the evidence showed conclusively that plaintiff was guilty of contributory negligence.

There was some testimony tending to show that plaintiff was about thirty years old, that he had some experience as telephone lineman, had on one or two occasions helped to string up uncharged electric wires or cables, had never worked on wires charged with high voltage of electricity, but knew it was dangerous to come in contact with such wires. Mr. Nye was superintendent for defendant in installing the electrical equipment, and a few days before the injury employed plaintiff as a lineman.

On March 18, 1906, in finishing the work, Mr. Nye directed plaintiff to go on top of the transformers and paint certain parts of the equipment there. There were three transformers, each about five feet high, resting on a brick foundation, and to do the work properly it was necessary for plaintiff to go on top of them. Having finished painting on the third transformer, plaintiff observed a place on one of the others, which had been overlooked, and in attempting to go there to paint it, he raised his body from a stooped position and his back came in contact with a live wire which was suspended from the roof and extended over the transformer, about three and a half or four feet above it, and was connected with the lightning arrester.

The direct current from the power company's main line was transmitted into each transformer by means of a wire connecting with an oil switch, and when this switch was properly thrown the current was cut out from the transformer, and in such condition there was no danger of contact with a live wire connected with the transformer. The danger of the situation arose from the deadly current flowing through the wire over the transformer connected with the lightning arrester. It appears that the oil switch would not cut the current off this wire.

No warning was given plaintiff that this wire was live, but on the contrary, it appears from the evidence, at folio 39, that Mr. Nye, the superintendent, assured plaintiff that he would cut off the oil switch and there would be no danger. At folio 51 this appears: "Did you

know there was any high current wire right above you?
A. No, sir, not after Mr. Nye told me he had cut off the current and ordered me to work.   Q.  Did Mr. Nye assure you that there was no danger?   A.  Yes, sir.   Q.  Is that what led you to go up there, Mr. Latimer?   A.  Yes, sir."

It is true that at the time of the trial plaintiff testified that the wire above him was connected with the lightning arrester and was not deadened by the throwing of the oil switch, but such knowledge after the occurrence is not surprising and does not, of course, conclusively show that he had such knowledge before the occurrence, in view of his testimony to the contrary.

The general principle of law applicable here is thus stated in *Owings* v. *Moneynick, 55 S. C., 483, 487, 33 S. E., 571:* "It is the duty of the master, when a servant is set to work at a dangerous place, or with dangerous machinery or other appliances, to warn the servant of the danger to which he is exposed, where he knows or ought to know that the servant is not aware of the danger; and it is negligence on the part of the master to fail to give such warning in such a case.   But where the servant knows the dangerous nature of the situation in which he is required to work, or of the machinery or other appliances which he is to use, such warning would not only be useless but would be absurd." As there was testimony tending to show that plaintiff did not know that the wire very near which he was put to work was live and that defendant was aware of such danger and of plaintiff's ignorance thereof and yet failed to warn plaintiff of danger but assured him of safety, there was evidence of negligence to go to the jury.

Assumption of risk by the plaintiff was not conclusively shown by the testimony.   If the plaintiff was ignorant of the fact that the wire was live and acted in reliance upon defendant's assurance of safety, as he testified, it cannot be affirmed that he assumed the risk.   The danger was not obvious but was hidden, as, according to the testimony, no one from mere inspection of the wire could

know that a deadly current was flowing through it.  *Mew* v. *Ry.,* 55 S. C., 100, 32 S. E., 828; *Elms* v. *Southern Power Co.,* 79 S. C., 508.  Nor is contributory negligence the only inference of which the testimony is susceptible.  If plaintiff was ignorant of the hidden danger and was acting in reliance on the defendant's promise to cut off the current and assurance of safety, he would naturally and reasonably regard the wire harmless and thus fail to take the necessary precaution to avoid contact with it.

There was therefore no error of law in refusing the motion for non-suit and to direct a verdict for defendant.

The remaining exception relates to the following incident during the trial.  Plaintiff had testified that previous to going upon the transformer, he asked Mr. Nye if he had got the current cut off, to which Mr. Nye replied that he had not, that he could not get in the telephone office and could not find the manager, that plaintiff then said: "I have just quit work for them and I can get in the office.  I know how to operate the switchboard and I could have the current cut off."  To which Mr. Nye replied, "No, that won't do.  It will look like we are intruding on them. We will go down and cut that oil switch out and there will be no danger and we will finish up the work and quit for the day."

In the argument on the motion for non-suit, Mr. Haynesworth, attorney for defendant, alluded to this testimony and spoke of the conduct of Mr. Nye in not authorizing an intrusion into the telephone office as very proper, whereupon his Honor Judge Watts, the jury being present, made this remark: "He (meaning Mr. Nye) was careful not to interfere with other people's property, but absolutely reckless of the lives of the people working under him."  Mr. Haynsworth then said: "As your Honor has already reached that conclusion in advance of the argument, it is unnecessary for me to continue," whereupon Judge Watts said: "I have reached the conclusion not to grant a nonsuit in this case."  Appellant contends that the remark of

the Judge that Mr. Nye, the alleged representative of defendant, "was absolutely reckless of the lives of the people working under him," was a strong expression of opinion as to a material question of fact in the case, and being made in the presence of the jury, was in effect a charge upon the facts in violation of the Constitution.

The general rule is that remarks made by a Circuit Judge in the course of a trial upon the admissibility of evidence or in refusing motion for nonsuit or motion to direct a verdict, do not fall within the inhibition of the Constitution against charging the jury as to matters of fact. *State* v. *Marchbanks,* 61 S. C., 17, 39 S. E., 187; *State* v. *Thrailkill,* 71 S. C., 142, 50 S. E., 551; *Tinsley* v. *Tel. Co.,* 72 S. C., 352, 51 S. E., 913; *Willis* v. *Tel. Co.,* 73 S. C., 383, 53 S. E., 639; *State* v. *Arnold,* 80 S. C., 383. But in *Willis* v. *Tel. Co.* the Court declared: "No doubt if such comments were carried to the extent that would make the Circuit Judge a participant in the decision of the facts upon which the issue depended, there would be good ground for a new trial as amounting practically to a disguised charge on the facts." In *State* v. *Arnold* the Court said: "Possibly a case might arise in which a Judge might abuse his privilege to give his reasons for refusing such a motion (to direct verdict), by using language which would be reasonably calculated to impress upon the jury his opinion as to what are the facts of the case, or as to the force or sufficiency of the testimony, etc."

We think the Circuit Judge in this case transcended the limits of his power and discretion, to the prejudice of appellant. He expressed before the jury in the strongest terms his opinion on the facts as to the vital issue in the case, and there is no reason to doubt that such remarks impressed the jury, that the Court not only thought the defendant negligent but absolutely reckless in protecting the lives of its employees. For this reason there must be a new trial.

The judgment of the Circuit Court is reversed.