10246

HARRY v. BARNETT.

(99 S. E. 822.)

1. APPEAL AND ERROR—HARMLESS ERROR—REMARKS OF JUDGE—COM-
MENT ON EVIDENCE.—Anything prejudicial in remark of Judge dur-
ing introduction of evidence, "A man wouldn't make that kind of
contract—peonage one—that would require him," etc., was cured;
he immediately afterwards, when defendant's counsel said, "He made
it and I have got the written contract in Court," saying, "Of course,
if written, he is bound by it."

2. LANDLORD AND TENANT—LEASE—CONSTRUCTION.—The words "said
farm," in the phrase in a cropper contract for part of the Wells
farm, giving tenant right to half of cotton seed raised, "provided he
remain on said farm another year," held properly construed as not
limited to the particular part of the Wells place that year cultivated
by the tenant.

3. LANDLORD AND TENANT—BREACH OF CONTRACT—DAMAGES—EVIDENCE.
—Evidence in action for breach of cropper contract by failure of
landlord to deliver to tenant part of cotton seed raised held sufficient
to sustain jury's finding as to amount of damages.

Before SEASE, J., Sumter, Spring term, 1918.    Affirmed.

Action by Peter Harry against H. D. Barnett for breach
of cropper contracts for the years 1914 and 1915.    Judg-
ment for plaintiff, and defendant appeals.

The contract for 1914, differing from that for 1915 only that in 1915 plaintiff was to plant 20 acres of cotton and 10 acres of corn, was, so far as material, as follows:

"This agreement made between estate J. E. Barnett, of the first part, and Peter Harry, of the second part, witnesseth:

"That the party of the second part agrees to cultivate a two-horse farm for party of the first part, on the place known as the Wells farm. The party of the second part agrees to prepare the land, plant and cultivate 40 acres in cotton, 10 acres in corn, and that they will prepare and plant the land and cultivate and gather the crop by the direction of the party of the first part or his agent, and will do any other work about that farm that may be necessary; that is, to keep ditch banks and hedgerows clean and the ditches open. And it is agreed, further, that the party of the second part shall use as much commercial fertilizer as may be agreed upon by the party of the first part, and that the party of the second part shall pay one-half of all manures used on said farm during present year. The party of the second part agrees also to furnish all labor that may be necessary to the making and gathering of said crop, and that no claim shall be made for same; and, further, that he will put all cotton produced on said farm in marketable condition, and will pay for one-half expenses of ginning and will pay for one-half bagging and ties used on said cotton.

"In consideration of the above agreements being faithfully carried out by the party of the second part, party of the first part agrees to give the party of the second part one-half of the entire crop made on said farm, except the cotton seed. And it is agreed that the party of the second part is to get one-half of the cotton seed made the present year, provided he remain on said farm another year, and use said seed as manure only; otherwise, party of the second part is to have no claim on seed whatever."

The first three exceptions are as follows:

1. That his Honor, the trial Judge, erred in stating in the presence of the jury, "A man wouldn't make that kind of contract—peonage one—that would require him to stay on his place and serve the balance of his life," for the reason that said remark conveyed to the jury the trial Judge's opinion upon a fact in dispute between the parties, in violation of the constitutional prohibition, and his Honor further erred in refusing to grant a new trial upon motion duly made on this ground.

2. That his Honor, the trial Judge, erred in refusing defendant's third request to charge, said request being as follows: "I charge you that under the contract of 1914 the plaintiff was entitled to have the cotton seed from the 1914 crop applied to the 1915 crop in proportion to the acres planted; that is to say, if the plaintiff planted 50 acres in 1914, under the contract, and only planted 25 acres in 1915, then he would be entitled to have one-half of the seed grown in 1914 applied to his 1915 crop, and unless you find that the defendant failed to apply the seed grown in 1914 in accordance with this principle, the plaintiff cannot recover. It is for you to say whether or not Harry executed the contract" —for the reason that said request contained a sound proposition of law applicable to the facts of this case.

3. That his Honor erred in construing the words "said farm," in the phrase "provided he remain on said farm another year," as meaning the Wells place, for the reason that said words refer to the particular portion of the Wells place cultivated by plaintiff during the particular year in question, and his Honor erred in not so holding.

*Messrs. L. D. Jennings* and *A. S. Harby,* for appellant, cite: *As to charge upon facts:* 99 S. C. 221; 81 S. C. 379; 62 S. E. 438; 80 S. C. 383; 61 S. C. 891; 73 S. C. 383. *Plaintiff never had title to the cotton in question:* 70 S. C. 392; 15 S. C. 86; 52 S. C. 580; 2 Bail. 581; 1 Hill 364; 1

Hill 339.   *Trover, which was the common law action upon
a conversion, cannot be maintained by one who has neither
title nor right of possession:* 38 Cyc. 2044.

*Mr. R. D. Epps* and *Raymon Schwartz,* for respondent,
cite: *As to the allegation of error complaining of the reason
given by the trial Judge for admitting certain testimony
upon the trial, the allegation of error being that the Judge
had given in the presence of the jury his opinion about a fact
in dispute between the parties: Stokes v. Murray,* 99 S. C.
221, cited and differentiated.

July 15, 1919.

The opinion of the Court was delivered by MR. JUSTICE
WATTS.

This is an appeal from a judgment in favor of respondent
for $300.   The cause was tried before Judge Sease, and a
jury, at the Spring term of Court, 1917, for Sumter county.
After entry of judgment defendant appeals, and by seven
exceptions imputes error.

The issues raised by the exceptions are: (1) Did his
Honor violate the constitutional inhibition against a charge
on the facts by his remark during the introduction of testi-
mony, as complained of in the exceptions?   This
exception is overruled.   It will be seen by reference
to what his Honor said when he made the remarks
complained of that immediately afterwards, when counsel
of defendant said, "He made it and I have got the writ-
ten contract in Court," his Honor said, "Of course, if,
written, he is bound by it."   This cured anything that
might have been prejudicial to the defendant by the pre-
vious remark of his Honr.   If there was anything prej-
udicial in it.   It is certainly not within the principle laid
down by this Court in *State v. Arnold,* 80 S. C. 383, 61 S.
E. 891; *Latimer v. Electric Co.,* 81 S. C. 379, 62 S. E. 438;
*Stokes v. Murray,* 99 S. C. 221, 83 S. E. 33.

The exceptions raise as a second issue, Did his Honor err in the construction of the contract? This exception is overruled. His Honor was correct in the construction of the contract between the parties.

The exceptions further raise the question that his Honor erred in overruling the motion for a new trial. The evidence shows that in 1914, from the cotton made, plaintiff was entitled to 9 tons of cotton seed, that 5 tons, or the equivalent in meal, was used, 2½ tons were furnished by each the plaintiff and defendant, and that defendant did not give the plaintiff the balance of the seed that belonged to him, but retained them and converted them to his own use; that the plaintiff was entitled to 6½ tons of seed, which he never received. There is testimony that seed were worth $65 to $70 per ton, and ample evidence to sustain the jury in their finding as to the measure of damages.

All exceptions are overruled, and judgment affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES HYDRICK and GAGE concur.

MR. JUSTICE FRASER. I dissent. I think his Honor went too far. He said that such a contract would amount to peonage. The plaintiff still denied the contract, and the statement materially affected the question of fact as to whether the plaintiff did or did not make the contract.