## 11460

### STATE v. SWYGERT

(124 S. E., 636)

1. Witnesses—Court Had Discretion to Lead Witness.—It was within discretion of presiding Judge to lead witness.

2. Homicide—Trial Judge Must Pass Upon Showing Made for Admission of Dying Declarations.—The trial Judge must pass upon the showing for admission of dying declarations.

3. CRIMINAL LAW—COURT'S STATEMENT IN ADMITTING DYING DECLARATIONS HELD NOT CHARGE ON FACTS.—Trial Judge's statement in ruling on admission of dying declarations, stating his belief .that decedent knew, when making declarations recited by Judge, that he was going to die, *held* statement of reasons for admitting testimony and not a charge on the facts.

4. CRIMINAL LAW—CAUTION TO TELL TRUTH NOT COERCION.—Caution to tell truth is not coercion, rendering admissions involuntary.

5. HOMICIDE—TESTIMONY AS TO DEFENDANT'S RELATIONS WITH YOUNG WOMAN HELD PROPERLY EXCLUDED AS IRRELEVANT.—In homicide prosecution, testimony as to relations betwen defendant and a young lady, irrelevant to any issue in the case, *held* properly excluded.

6 CRIMINAL LAW—COURT'S STATEMENT THAT HIS MISTAKES COULD BE CORRECTED BUT NOT THOSE OF JURY HELD NOT PREJUDICIAL.—Presiding Judge's statement to juy that Supreme Court could correct any error of law made by him, but there was no tribunal that could correct mistake of jury, *held* not prejudicial, as it tended to make the jury cautious.

7. HOMICIDE—COURT'S STATEMENT WARNING JURY OF DANGERS OF "UNWRITTEN LAW" HELD PROPER.—In homicide prosecution, Court's remarks warning jury of dangers of so-called "unwritten law" *held* proper.

8. CRIMINAL LAW—CHARGE DEFINING REASONABLE DOUBT HELD PROPER. —Charge defining reasonable doubt as doubt growing out of the testimony, and for which "you can give a reason from the testimony," was not erroneous for not charging that it was a doubt arising from lack of testimony, as well as from testimony given.

9. CRIMINAL LAW—INSTRUCTION ON BURDEN OF PROVING SELF-DEFENCE HELD NOT TO OVERSHADOW BURDEN OF STATE, AND NOT A CHARGE ON THE FACTS.—In homicide prosecution, charge on defendant's burden of establishing plea of self-defense *held* proper as against contention that it overshadowed burden resting upon State to prove defendant's guilt, and that it was ambiguous, misleading, and tended to confuse jury, and was a charge on the facts.

10. HOMICIDE—INSTRUCTION ON FAULT IN BRINGING ON DIFFICULTY HELD PROPERLY REFUSED.—Instruction as to fault in bringing on difficulty *held* properly refused for failure to embrace element of reasonable means of escape.

11. CRIMINAL LAW—REFUSAL OF REQUESTED CHARGES HELD NOT ERROR, IN VIEW OF OTHER CHARGES ON SAME SUBJECT.—Refusal of defendant's requested charges as to self-defense *held* not error, in view of other correct charges on same subject; Court not being bound to accept exact language of request.

12. CRIMINAL LAW—COMMENT OF JUDGE IN GIVING REQUESTED CHARGE HELD NOT PREJUDICIAL ERROR.—Comment of Court in allowing defendant's requested charge on self-defense that "I think that it is more of an argument than a request," and that defendant could not claim benefit of self-defense if he had any probable means of escape, *held* not prejudicial error.

13. HOMICIDE—REFUSAL OF CHARGE ON PROVOKING DIFFICULTY HELD PROPER.—In homicide prosecution, refusal of charge on provoking difficulty *held* proper.

14. CRIMINAL LAW—SUPREME COURT CANNOT OVERRULE TRIAL COURT'S DETERMINATION AS TO RESIDENCE OF FOREMAN OF JURY.—The Supreme Court cannot overrule trial Court's determination as to residence of foreman of jury.

Before N. G. EVANS, SPECIAL JUDGE, Lexington, September, 1922.   Affirmed.

Job C. Swygert was convicted of manslaughter and he appeals.

The exceptions are as follows:

### EXCEPTIONS

(1) The Court erred in not sustaining the objection of appellant to the following question and answer propounded to and answered by the witness Oxner: "Q. Was Dr. Nicholson chasing Mr. Swygert, and was Mr. Swygert going back towards his home during this time?   A. No, sir," and in ruling that the witness had been examined by both sides on that same point and that the witness had already testified right along on the same line; the error being that the question objected to was a leading question upon a crucial point in the case and suggested to the witness the answer that was desired, and expected by the examined, and the comment of the Judge upon the question and answer and the objection thereto tended to stress the importance of the question and emphasize the answer thereto to the prejudice of the defendant.

(2) The Court erred in allowing the witness Mrs. J. C. Nicholson, widow of the deceased, to testify to alleged statements made to her and in her presence by the deceased

for the reasons: (a) The alleged declarations were no part of the *res gestae;* (b) the deceased was not shown to be in *extremis;* (c) the deceased was not shown to believe that death was imminent and that he had given up all hope of life; (d) because the testimony showed that the deceased had not given up all hope of life, and that he did not regard death as imminent; (e) because the alleged statements were not free and voluntary, but in response to interrogatories propounded by an outsider; (f) because the subject of the declaration was not the death of the declarant; (g) because the alleged declaration related to transactions preceding the fatal encounter; (h) because part of the alleged declaration was an expression of opinion, on the part of the declarant, and not a statement of fact.

(3) The Court erred in ruling that the fact that the deceased had consented to an operation, fully understanding the nature of his injuries, did not affect the question as to the competency of the alleged dying declaration, and that, notwithstanding the deceased fully understood the nature and extent of his injuries, he being a physician, and consented to an operation, the alleged dying declaration was nevertheless competent; the error being: (a) That such conduct on the part of the deceased tended to show that he had not lost all hope of life at the time of the alleged declaration, but that he was hopeful of beneficial results from the operation; (b) the nature of the testimony at least required that the presiding Judge should have submitted to the jury the issue of whether or not the deceased had lost all hope of life at the time of the alleged declaration.

(4) The Court erred in ruling as follows: "I take it that when Dr. Nicholson stated to his wife these words, 'I am going to leave you; we must part; we have lived together for a number of years and we must part,' and when he gave her that ring—I cannot help but admit that testimony—I believe he was in *extremis,* and I believe he knew it, because he was telling the one 'Good-bye' that was dear-

est to him on earth; and I do not believe a man would have
made such a statement as that unless he knew he was going
to die.   I will admit that testimony;" the error being: (a)
That the ruling so made was in effect a charge on a vital
fact in the case; (b) it was a declaration on the part
of the Judge that he believed the statement of the witness
and the statements of the deceased, and that the same
might be taken as a fact; (c) the ruling was in effect a
sympathetic appeal in support of the alleged dying declara-
tion, as related by the witness, and thereby impressed the
jury with the idea that the Judge thought they ought to
accept the statement as he accepted it; (d) the comment
was unfavorable to the interest of the appellant, and tended
to give to the alleged dying declaration a colorful effect,
harmful and prejudicial to the appellant.

(5) The Court erred in not holding and ruling that a
dying declaration before admitted as testimony should first
be shown to be free and voluntary, upon objection made
during testimony of Mrs. J. C. Nicholson; the error being
that the rule is elementary that all dying declarations must
be shown to be free and voluntary before they are admissible
in testimony.

(6) The Court erred in ruling, while Mrs. J. C. Nichol-
son was testifying, that declarations by the deceased, made
in response to interrogatories, about things done or said,
or that had not been done or said, prior to the alleged fatal
encounter, were legitimate subjects of a dying declaration;
the error being:   (a) That a dying declaration must be
free and voluntary, uninfluenced by outside suggestion; and
(b) the subject of it must be the death of the declarant
and not a narration of preceding events or a denial thereof

(7) The Court erred in holding the following question,
propounded to Mrs. J. C. Nicholson, and answer thereto
competent:   "Q. At the time that ring was given to you,
the doctor told you of his condition and that he knew you
must part.   Did he say anything at all or not about the

affray having come on without provocation from him? A. Yes, Sir; I was interrupted or I would have told it"; the error being: (a) That the question was clearly leading; and (b) it was not a statement of fact, but an expression of an opinion.

(8) The Court erred in not striking out all of the testimony of the witness Mrs. J. C. Nicholson in regard to an alleged dying declaration of the deceased, the motion therefor having been made by counsel for the appellant; the error being: (a) That the deceased was not shown to have been in *extremis* at the time of the alleged declaration; (b) it was shown that the deceased had hope of life at the time of the alleged declaration; (c) a part of the declaration was an expression of opinion rather than a statement of fact; (d) the declaration did not relate to the death of the declarant, but to the existence or nonexistence of past acts and conduct; (e) and contained declarations of parties other than the deceased.

(9) The Court erred in ruling out the testimony of Mrs. Eta Derrick, daughter of appellant in regard to any improper conduct between appellant, her father, and Miss Lowman, in appellant's home; the error being that it had already been admitted in testimony that the deceased had made ·charges against the appellant, specifying improper relations between the appellant and the said Miss Lowman, in his home, and the testimony of the witness would have tended to explain the reasons for appellant speaking to the deceased about circulating slanderous reports about him and his family relations, and the testimony tended to explain why the deceased immediately assaulted the accused upon being questioned about the slanders.

(10) The Court erred in allowing the witness Mrs. J. C. Nicholson, wife of the deceased, to testify in reply to certain declarations made to her by the deceased as to her future conduct, and in regard to Miss Lowman; the error being: (a) That the testimony was no part of the *res gestae;* (b)

it was no part of a dying declaration; (c) the declaration did not relate to the difficulty that resulted in fatal injuries to the deceased; (d) it was contradictory to the ruling already made as to the witness, Mrs. Eta Derrick offered in behalf of the defendant; (e) it was an attempt to enlarge upon an alleged dying declaration that had already been gone into in chief; (f) it was not in reply.

(11) The Court erred in charging the jury as follows: "If I make a mistake, I can be corrected, because the Supreme Court can correct any error of law I make; otherwise, if you make a mistake, there is no tribunal known to our law that can correct it"; the error being: (a) That said charge did not state a sound proposition of law applicable to the issues to be determined in the case; (b) it is common knowledge that a person once acquitted of a crime cannot be tried again for the same offense, and the instruction was tantamount to saying to the jury that a mistake would be made should the appellant be acquitted, because the trial Court could correct a mistake of a jury if it resulted in a wrongful conviction of the accused.

(12) The Court erred in charging the jury as follows: "I want to impress upon you with all the power that is within me—it has been intimated here in the heat of argument that you will consider an unwritten law. There is no such thing in this country as an unwritten law. Here is the law as declared by our Supreme Court; and here are the statutes that have been enacted by our Legislature that you are to carry out, and you are to know no other law in this case. If you did, you would violate your oaths, and you do not look like twelve men who would want to violate their oaths. You dismiss from your minds that there is any such thing in this country, that there is anything higher in our Courtroom than the law, because if the law is wrong, the Supreme Court can correct it, and you and the balance of us are to be governed by the laws of the country. If you do not uphold it, where else can it be upheld except in

the jury box. You are bound to take the law as I give it to you. If I make a mistake, I can be corrected; but if you make a mistake, you cannot be corrected"; the error being: (a) That there was no basis for such a charge, unless it be found in the statement of counsel for appellant during the taking of the testimony or in request to charge to the effect that as a matter of law one could not be said to be in fault in bringing on a difficulty simply because he protested to another about slanders that such another had made concerning him, members of his family or his household; (b) the charge complained of injected into the case an issue foreign to it, and one that had not been made either by appellant or his counsel on the trial of the cause; and (c) the charge tended to impress the jury with the idea that the appellant, or his counsel, were attempting to mislead the jury as to the true issues in the case, when there is no basis in the record for such assumption.

(13) The Court erred in charging the jury as follows: "If any other offense has crept into this case, you have nothing to do with it, because there are law in our Statute books which cover every offense that I know that is capable of being committed or that may be committed, that a man or woman may be capable of committing—and they stand on the same footing in the Courthouse; and there are criminal Statutes which cover all the crimes that I know of; and no later than 1912 our Legislature enacted a law—and I will state this to you, in order that you may know, that, if any other crime has been committed in connection with this case, then there is a law to fit it. The law of 1912, as enacted by our Legislature, makes it a crime, with awful punishment, for anybody to talk and tell lies to injure the character of another. That is on our Statute books, and can be enforced in our Courts. So you are to take and have under consideration nothing except the homicide which J. C. Swygert is alleged to have committed in killing J. C. Nicholson"; the error being: (a) That said charge did not

contain a sound proposition of law which was applicable to the issues made in the case; (b) it was in effect an instruction to the jury to disregard the testimony on behalf of the appellant which went to explain why appellant spoke to the deceased on the morning of the fatal encounter, which said testimony had been admitted as competent testimony by the Court; (c) the instruction tended to take from the consideration of the jury testimony that would explain the attitude of both the deceased and the accused at the time of the fatal difficulty; and (d) it was argumentative in form, to the detriment of the appellant.

(14) The Court erred in charging the jury "that a reasonable doubt is a doubt that grows out of the testimony in a case and for which you can give a reason from the testimony given in this case"; the error being that the appellant was entitled to any reasonable doubt arising in the minds of the jury from the lack of testimony, and the Court should have so charged.

(15) The Court erred in unduly, repeatedly, and unnecessarily emphasizing the burden that the appellant was carrying in establishing his plea of self-defense; the error being that the instruction so given, as to the burden to be carried by the appellant, overshadowed, in the minds of the jury, the burden to be carried by the state, and tending to unduly influence the minds of the jury to the detriment of the appellant.

(16) The Court erred in charging the jury as follows: "Those are the four elements necessary to make out a good plea of self-defense; when they are made out, you see it covers those four elements; they cover practically every excuse that a man could have for taking a man's life justifiably, and all four of those elements must be proved, separate and distinct, by the preponderance of the testimony. If he fails to prove that he was without fault in bringing on the difficulty, and the testimony shows that he brought on the difficulty, why then the plea of self-defense fails. If he

fails to show you that a reasonable man, placed in the same position he was at the time—a reasonable man, of prudence and firmness—would have believed that he was in danger of receiving serious bodily harm or death or probably being killed, why he must show that to you"; the error being: (a) That said instruction was ambiguous, misleading, and tended to confuse the jury; and (b) it was a charge upon the facts, in that the jury was instructed that "the testimony shows that he (appellant) brought on the difficulty."

(17) The Court erred in charging the jury as follows: "The first element of self-defense is that he must not bring on the difficulty. For instance, Mr. Foreman: If I, or any other man in this Courthouse, were to walk up to you and use such opprobrious epithets, as usually bring on a difficulty, and does it intending to provoke you, in order to give him an opportunity to injure you bodily, or probably kill you, the law says his plea of self-defense must fail, if he used such epithets that he knew would enrage you to bring on a fight"; the error being: (a) That the instruction so given was argumentative, and was highly prejudicial to appellant's rights, in that a personal application of the Court's reasoning was made to a member of the jury; (b) the instruction was in effect a charge on the facts, in that it contained a statement disclosing and emphasizing the theory of the prosecution as shown by the record in this case, disregarding entirely any reference to the appellant's contention as disclosed by the record in the case; and (c) the instruction tended to emphasize the theory of the State as disclosed by the record and to impress the jury that the Court thought the appellant had brought on the difficulty.

(18) The Court erred in charging the jury as follows: "Then he must go a step further and make out the three elements. Could he have avoided the difficulty by stepping aside, or was there any probable way or reasonable way by which he could have avoided bringing on the difficulty? If so, it was incumbent upon him to have done it; if he did

not do it, and went there with the intention of bringing on
the difficulty, and during that difficulty, or in continuing the
act, he killed his adversary, and he was to blame for bring-
ing on the difficulty, went there with the intention of donig
it, using opprobrious epithets for the purpose of bringing
it on, his plea of self-defense would fail"; the error being:
(a) That said instruction was a charge on the facts, in that
it presupposed that the appellant had brought on the difficulty
(b) it injected a foreign issue in the law of self-defense, in
that the jury were instructed to inquire if there was any
probable or reasonable way by which the appellant could
have avoided bringing on the difficulty, when the proper
question to have been submitted to the jury was, Did or not
the appellant bring on the difficulty? and the jury was
thereby misled and confused to the prejudice of the appel-
lant; and (c) the Court's language was susceptible to the
inference that the "appellant was to blame for bringing on
the difficulty," and was therefore misleading and a charge
upon the facts.

(19) The Court erred in charging the jury as follows:
"Now, gentlemen, as I stated to you before, this case is
narrowed down to you under the plea of self-defense, and
I have defined it and read it from this book; and that must
be proven to you to your satisfaction by the greater weight
of the evidence, that is his plea of self-defense; it is in-
cumbent upon the defendant to prove it; the State has
nothing to do with that end of it; the State must prove its
case as alleged in this indictment; then the defendant comes
in and proves his plea to it, which, as he says, was done in
the nature of self-defense"; the error being: (a) That the
instruction so given was tantamount to saying that the de-
fendant must prove his innocence by the preponderance of
the eivdence; (b) it was in effect stated to the jury that,
although they might entertain a reasonable doubt as to the
guilt of the accused, yet if he failed to establish his plea of
self-defense by the greater weight of the evidence he must

be convicted of something; and (c) the instruction left out all consideration of the burden ofthe proof resting on the State throughout the trial to establish guilt of the accused beyond a reasonable doubt.

(20) The Court erred in refusing to charge appellant's second request as follows: "If the defendant was without fault in bringing on the difficulty, and if the jury are further satisfied from the evidence that the defendant inflicted the wound which caused the death of the deceased, and that the circumstances in which the defendant was placed at the time of the shooting was such to induce a reasonable belief that there was a necessity to take the life of the deceased in order to save his own life or to protect himself from serious bodily harm, the killing was excusable homicide, and the jury should render a verdict of not quilty"; the error being that said request contained a sound proposition of law applicable to the issues of the case.

(21) The Court erred in not charging the defendant's third request as follows: "If the jury find that the defendant was without fault in bringing on the difficulty, and that he actually believed that he was in immediate danger of losing his life or sustaining serious bodily harm, that it was necessary for his own protection to take the life of the deceased, and if in the opinion of the jury the circumstances in which the accused was placed were such as would justify such a belief in the mind of a person of ordinary reason and firmness, then a case of self-defense is fully made out, and the verdict should be 'not guilty' "; the error being that said request contained a sound proposition of law applicable to the issues of the case.

(22) The Court erred in refusing to charge appellant's fourth request as follows: "A man is not bound, if his life is in danger, to wait until he receives a fatal wound, or until some great bodily injury is inflicted upon him, before he can take the life of the other, provided all the elements of self-defense are present. Nor need he make or attempt

to make nice calculations as to whether his life is in danger, or whether he is in danger of receiving some great bodily injury, before taking the life of his assailant, for the standard is, What will a man of ordinary firmness, reason and prudence believe or do under such circumstances?" The error being that said request contained a sound proposition of law applicable to the issues in the case.

(23) The Court erred in not charging the appellant's fifth request as follows: "The right of self-defense is a God-given right. To repel force by force is the common instinct of every creature that has means of defense. For one to resist an unrighteous attack is not merely a thing to be tolerated, but in many cases it is a moral duty, and, if one who is himself without fault in bringing on a difficulty is attacked by another and his life or limb is put in peril, and if it is necessary for him to kill his assailant to thus protect his own person or life, and he fails to protect himself from death or serious bodily injury, even to the killing of his assailant, he would not be true to himself, and would not fulfill a moral obligation resting upon him"; the error being that said request contained a sound proposition of law applicable to the issues in the case.

(24) The Court erred in refusing to charge appellant's seventh request as follows: "Where two men engaged in a quarrel, and one of them appears to attempt to draw a pistol or other weapon, the other is not bound to wait until he finds out what he is going to do, for such delay might be fatal to his life"; the error being that said request contained a sound proposition of law applicable to the issues in the case.

(25) The Court erred in refusing to charge appellant's ninth request as follows: "If one, without fault in bringing on the difficulty, is assaulted by another apparently intending to do him serious or grievous injury, and of that the jury are the judges, the one assaulted need not wait, but if under the circumstances surrounding him he actually be-

lieves that his life is in danger, or that he was likely to suffer great bodily injury, and if the jury believed that a man of ordinary reason and firmness would have so believed himself to be in such danger and would have acted as the defendant did, then your verdict would not be guilty"; the error being that said request contained a sound proposition of law applicable to the issues in the case.

(26) The Court erred in commenting as follows on appellant's tenth request to charge:. "I think that is more of an argument than a request, but I am going to charge it; it is more of an argument than a request to charge"; the error being that the request contained a sound proposition of law applicable to the issues in the case, and the Judge's unfavored remarks preceding the giving of the instruction tended to prejudice the minds of the jury against it and destroyed its effect.

(27) The Court erred in commenting on appellant's tenth request to charge by instructing the jury that the appellant could not claim the benefit of self-defense if he had any probable means or way of escape; the error being that the one assaulted is not bound to retreat unless the way or means thereof is consistent with his safety; the law does not require him to take chances inconsistent with his safety.

(28) The Court erred in making the following comment on appellant's fourteenth request to charge: "I charge you that he must make out his plea of self-defense by the preponderance of the evidence, and you are to be the judges of what is the greater weight, which side the scales go down on. He must prove it; he has alleged it; the State is not required to prove it; the error being: (a) The instruction so given placed undue emphasis on the burden to be carried by the appellant in establishing his plea of self-defense; (b) it tended to impress the jury with the idea that the appellant should be convicted if the appellant did not make out his plea of self-defense by the preponderance of the evidence, without the regard to whether or not the State had proved

its case beyond a reasonable doubt; and (c) it minimized in the eyes of the jury the burden resting on the State to prove the guilt of the accused beyond a reasonable doubt.

(29) The Court erred in refusing to charge appellant's sixteenth request as follows: "While it is true, as a general proposition, that one who provokes a difficulty cannot successfully maintain a plea of self-defense, yet it cannot be said, as a matter of law, that one has provoked a difficulty simply because he inquires of another about circulating scandalous and false reports about him, members of his household, or members of his family"; the error being that it contained a sound proposition of law applicable to the issues in the case.

(30) The Court erred in refusing to charge appellant's seventeenth request to charge as follows: "If one person is circulating scandalous and untrue reports about another person, about members of his household, or members of his family, the person who is talked about, or whose household or whose family are talked about, has a legal right to ask the person doing the talking, upon seeing him, to stop it; and, if the person circulating the false and scandalous reports resents being thus approached, and makes a deadly assault, or an apparently deadly assault, upon the person complaining to him, the person assaulted, under such circumstances, would have the legal right to defend himself, even to the taking of the life of his assailant, if necessary or apparently necessary to save himself from serious bodily harm or death"; the error being that said request contained a sound proposition of law applicable to the issues in the case.

(31) The Court erred in charging the jury as follows: "It all must be proved by the preponderance of the testimony all of these elements of self-defense; and the same way the State must prove his guilt beyond a reasonable doubt"; the error being that the instruction so given was susceptible of the reasonable inference that the burden of the appellant in

making out his plea of self-defense was the same as that resting on the State to prove the accused guilty, or that the burden resting on the State to establish guilt was the same as that resting on the defendant to establish his special plea.

(32) The Court erred in not granting the motion to set aside the verdict and granting a new trial on the ground that Virgil T. Shull, a member and foreman of the jury, was not a citizen and resident of the county of Lexington; the error being that the proof offered in support of the motion conclusively showed that said juror was not a citizen and resident of the county of Lexington, and was therefore an illegal juror and not qualified to sit as such upon the trial of the accused.

*Messrs. Timmerman & Graham, E. L. Asbill, Cyrus L. Shealy* and *Martin & Sturkie,* for appellant, cite: *Leading questions:* 15 S. C., 328. *Dying declarations:* 30 C. J., 251, 255; 98 S. C., 390; 14 S. C., 413; 24 S. C., 188; 13 S. C., 463; 103 S. C., 320; 107 S. C., 438. *Charge on facts:* 35 S. C., 296; 80 S. C., 387; 81 S. C., 379; 99 S. C., 227; 118 S. E., 922. *Dying declaration if admissible should be confined to circumstance of killing:* 41 S. C., 529; 24 S. C., 189; 12 Rich., 321. *Where there is doubt as to admissibility of evidence it should be solved in favor of defendant:* 118 S. E., 841. *Improper evidence presumed to be prejudicial:* 117 S. C., 51. *Slanderous statements by deceased admissible:* 117 S. C., 51; 83 S. C., 57; 85 S. C., 171; 87 S. C., 193; 87 S. C., 410. *Indication of opinion by Judge improper:* 89 S. C., 142; 92 S. C., 494; 98 S. C., 299. *Reasonable doubt:* 12 Cyc.,627. *Judge imposed burden on defendant of establishing plea of self-defense unduly:* 71 S. C., 136; 84 S. C., 532; 82 S. C., 488; 85 S. C., 268. *Judge erred in not charging request as to self-defense:* 59 S. C., 297; 71 S. C., 146. *Law of retreat:* 30 C. J., 44, 67. *Accused not the aggressor:* 75 S. C., 510. *New trial should have been granted because of disqualified juror:* 54

S. C., 127; 54 S. C., 152; 55 S. C., 95; 74 S. C., 465. *Place of residence determined:* 73 S. C., 184; 80 S. C., 483.

*Messrs. T. C. Callison, Solicitor; Cole L. Blease, Efird & Carroll, Crouch & Ramage,* for the State, cite: *Leading questions are in discretion of trial Judge:* 84 S. C., 283; 65 S. C., 1. *Dying declarations:* 26 S. C., 152; 79 S. C., 63; 89 S. C., 551; 60 S. C., 519; 111 S. C., 356. *Whether statements in dying declaration were matters of opinion was for the jury:* 15 Rich., 342; 13 S. C., 453; 56 S. C., 360; 58 S. C., 335; 93 S. C., 503; 43 S. C., 132; 25 Mich., 405; 37 Sou., 101; 58 S. W., 350; 48 N. E., 465; 91 S. W., 662; 26 Sou., 390; 37 Sou., 101; 51 S. W., 565; 81 S. W., 746; 75 Ky., 1; 49 S. W., 508; 90 S. W., 8; 75 S. W., 314; 97 Ind., 322; 86 Pac., 79; 34 S. C., 136; 1 Tex. App., 739; 3 Tex. App., 386; 14 S. C., 410; 35 Am. Dec., 54; 36 A. R., 257; 2 Sou., 799; 67 Ala., 67; 46 Am. Dec., 276; 16 Ala., 672; 17 Ala., 587; 17 Sou., 37; 44 A. S. R., 63; 25 Mich., 405; 26 Much., 112; 32 Pac. 1031; 12 Rich. L., 321. *Judge properly charged as to unwritten law:* 79 S. C., 80. *And as to words justifying blows:* 32 S. C., 54. *Reasonable doubt:* 32 S. C., 117; 55 S. C., 32; 49 S. C., 285. *Charge must be considered as a whole:* 22 S. C., 476; 23 S. C., 190; 24 S. C., 124. *What amounts to residence:* 32 S. C., 392; 47 S. C., 78; 73 S. C., 181; 86 S. C., 324; Speers Eq. 1; 5 Ves., 750. *Domicile once acquired is retained until new domicile is obtained:* 93 S. C., 605; 98 Mass., 158; 8 Sou., 722; 27 Atl., 291; 83 Am. Dec., 502; 24 Atl., 916; Speers. Eq., 1.

October 15, 1924.

Rehearing denied Oct. 16, 1924.

The opinion of the Court was delivered by Mr. JUSTICE FRASER.

On the 5th day of April, 1921, Dr. J. C. Nicholson drove his automobile to the store of Mr. Oxner and stopped to get some gasoline for his car. While he was standing there the

appellant came up. There had been bad blood between the appellant and Dr. Nicholson for some time. The evidence tends to show that appellant, when he came up, said to Dr. Nicholson: "You must stop telling your lies on me and my family"; that when Dr. Nicholson turned around he grabbed hold of appellant and appellant shot him several times. Dr. Nicholson lived a few hours and died in a hospital in Columbia, where he was carried for an operation. The appellant, Swygert, was tried for murder and convicted of manslaughter. From this conviction the defendant appealed.

I. The first assignment of error is that the presiding Judge allowed the Solicitor to lead a witness. This was within the discretion of the presiding Judge, and we see no abuse of discretion. This assignment of error cannot be sustained.

II. The next assignment of error is in regard to a dying declaration. The trial Judge must pass upon the showing. The reasons stated by the trial Judge was not a charge on the facts but a statement of his reasons for admitting the testimony, and not reversible error. The bare admission of the testimony showed that he thought that the deceased had no hope of life, and his statement added nothing to its force. It is claimed that a part of the statement did not relate to the immediate difficulty.

In *State v. Petsch*, 43 S. C., 148; 20 S. E., 999, we find: "It may well be questioned whether a motion to strike out of a dying declaration such portions thereof as may be supposed to be objectionable is proper, and whether the better practice is not to move the Circuit Judge to instruct the jury to disregard such portions as may, for any cause, be deemed objectionable."

There is nothing to base the objection upon that the statements were not free and voluntary. A caution to tell the truth is not coercion.

III. The next assignment of error is that his Honor excluded the testimony of Mrs. Derrick in regard to the relations between the appellant and a young lady. The testimony was clearly irrelevant to any issue in the case and properly excluded. The mention of the name of the lady was most unfortunate, and the whole thing should have been excluded, certainly the name of the young lady. This objection cannot be sustained.

IV. It is claimed that his Honor, the trial Judge, erred in saying:

"If I make a mistake, it can be corrected, because the Supreme Court can correct any error of law I make; otherwise, if you make a mistake, there is no tribunal known to the law that can correct it."

That statement is true. While the trial Judge may set aside a verdict, that does not correct the error. It is not prejudicial error in any event, as it tended to make the jury extremely cautious. There was no reversible error here.

V. Appellant says:

"In the course of extended remarks preliminary to instructions on the law, the presiding Judge, 'with all the power' that was in him, undertook to warn the jury of the dangers of the so-called 'unwritten law,' and in connection therewith to exhort the jury to accept the law from the Court."

That was proper. The presiding Judge should use his entire power to clearly declare the law and to instruct the jury to obey the law as given by the presiding Judge.

The thirteenth exception is covered by what has been said.

VI. The fourteenth exception is:

"The Court erred in charging the jury 'that a reasonable doubt is a doubt that grows out of the testimony in a case and for which you can give a reason from the testimony given in this case"; the error being that the appellant

was entitled to any reasonable doubt arising in the minds of the jury from the lack of testimony, and the Court should have so charged."

The testimony shows, not only what is proven, but what the defects are as well.

VII. "The fifteenth exception complains that the presiding Judge so unduly and unreasonably emphasized the burden resting on the defendant to establish his plea of self-defense by the greater weight of the evidence as to overshadow the burden resting upon the State to prove the defendant's guilt beyond a reasonable doubt." The charge was clear and forceful, and not subject to this criticism. This covers the sixteenth exception, and the illustration used in the seventeenth exception was not error. Nor was there error as alleged in the eighteenth and nineteenth exceptions, when the charge is considered as a whole.

VIII. The twentieth, twenty-first, and twenty-second exceptions read:

"The Court erred in refusing to charge appellant's second request as follows: 'If the defendant was without fault in bring on the difficulty, and if the jury are further satisfied from the evidence that the defendant inflicted the wound which caused the death of the deceased, and that the circumstances in which the defendant was placed at the time of the shooting were such as to induce a reasonable belief that there was a necessity to take the life of the deceased in order to save his own life or to protect himself from serious bodily harm, the killing was excusable homicide and the jury should render a verdict of not guilty"; the error being that said request contained a sound proposition of law applicable to the issues of the case.

"(21) The Court erred in not charging the defendant's third request as follows: 'If the jury find that the defendant was without fault in bringing on the difficulty, and that he actually believed that he was in immediate danger of losing his life or sustaining serious bodily harm, that it was

necessary for his own protection to take the life of the deceased, and, if in the opinion of the jury the circumstances in which the accused was placed were such as would justify such a belief in the mind of a person of ordinary reason and firmness, then a case of self-defense is fully made out, and the verdict should be 'not guilty'; the error being that said request contained a sound proposition of law applicable to the issues of the case.

"(22) The Court erred in refusing to charge appellant's fourth request as follows: 'A man is not bound, if his life is in danger, to wait until he receives a fatal wound, or until some great bodily injury is inflicted upon him, before he can take the life of the other, provided all the elements of self-defense are present. Nor need he make or attempt to make nice calculations as to whether his life is in danger, or whether he is in danger of receiving some great bodily injury, before taking the life of his assailant, for the standard is, what will a man of ordinary firmness, reason, and prudence believe or do under such circumstances'? The error being that said request contained a sound proposition of law applicable to the issues in the case."

Each request to charge must contain a complete statement, and these requests contained only a partial statement, leaving out a reasonable means of escape. The general charge fully covered the law.

IX. The twenty-third, twenty-fourth and twenty-fifth exceptions complain of his Honor's failure to charge requests as to the right of self-defense. The presiding Judge correctly charged the law as to self-defense, and he is not bound to accept the exact language of a request to charge.

X. The twenty-sixth and twenty-seventh exceptions claim prejudicial error in his remarks on the appellant's tenth request to charge. His Honor charged the requests, and his remarks were not prejudicial.

XI. Let the exceptions be reported.

The twenty-eighth, twenty-ninth, and thirtieth exceptions are overruled. The charge taken as a whole was free from error, and not open to the inference claimed by the appellant.

The case of *State v. Burdette,* 118 S. C.,170; 101 S. E., 664, is not in point. In that case the effort was to prevent a specific unlawful act and in no way to avenge a past act.

XII. The last exception is that the foreman of the jury was not a resident of Lexington County but of Richland County. The residence of the juror was a matter of fact, and this Court has no jurisdiction to overrule the trial Judge.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE COTHRAN concur.

MR. JUSTICE WATTS dissents.

MR. JUSTICE MARION did not participate.

MR. JUSTICE WATTS (dissenting) : I cannot concur in the opinion of MR. JUSTICE FRASER. I think the judgment of the Circuit Court should be reversed and a new trial granted.

His Honor's remarks during the trial were prejudicial to the appellant, and made him a participant with the jury under *Latimer v. Electric Co.,* 81 S. C., 379; 62 S. E., 438, and *Stokes v. Murray,* 99 S. C., 221; 83 S. E., 33; his whole charge to the jury was prejudicial to the defendant.

Defendant did not rely on the "unwritten law," but simply wanted all the facts leading up to the killing to be brought out for consideration of the jury. Ordinarily, when a person is killed intentionally by a deadly weapon, and that fact is proved, the law presumes malice, but with all the facts and circumstances attending the killing this presumption no longer attaches; it becomes a question of fact for the jury to determine as any other fact in the case. His Honor charged the jury that the act of 1912 (27 Stat. at

L., p. 775) afforded a remedy that the defendant could have availed himself of "for anybody to talk and tell lies to injure the character of another," thereby misleading the jury by inferring that the defendant had only this remedy; that it was exclusive and that he did not avail himself of it but accosted Dr. Nicholson; that he brought on the difficulty. I know of no law, human or divine, to the effect that, when a man's family is slandered, and he asks the author of the slander about it, even if he is irritated, and uses curse words he brings on the difficulty, if one follows. It is for the jury to say under all of the facts and circumstances if a woman is slandered, whether the person who propagated the slander is not the one who brought on the difficulty. There are some crimes that the law does not reach, and any one who falsely slanders the good name of a woman may expect to have a difficulty, and it is for the jury to say whether the slander and circulation of it brought on the difficulty or whether the party who sought the author of the slander brought it on, if a difficulty followed. In the instant case the jury should have been permitted to determine this issue—whether Dr. Nicholson by propagating the slander brought on the difficulty, or whether the defendant by asking Nicholson about it brought it on. It has been said, "that virtue and modesty is a woman's greatest jewel, and like a potato without a peel the first dust sullies its purity." To hold that it is incompetent to show that the alleged slanders started by Dr. Nicholson against the woman cannot be brought out puts it in the power of any one, whether blackguard or what, to destroy the fair name of any woman, and she is helpless to show the falsity of the slander.

It was nothing but just that Mrs. Derrick should have been allowed to tell what she knew as to the truth or falsity of the charge made by Nicholson in reference to the women. That would have been just to the women, State, and defendant. I am not going to subscribe to a doctrine that puts it in the power of any one to tarnish and besmirch the fair

name of a woman and leave her the only remedy of going into the Courts to establish her reputation, and when a male member of her family or her friend seeks, or accidentally meets up with the author, and asks him about it, and a quarrel and difficulty arises, that the cause of the difficulty is to be placed upon the member of her family or friend. It is for the jury to say whether the author of the slander or the member of the family or friend brought it on. I do not think the women of this State will appreciate the fact that they are to be slandered, whether true or false and the only remedy is the Courts, or, as the Judge suggested, the Act of 1912. I am old-fashioned, and believe that men should work and fight for their women; of course staying within the law in doing so.

All the facts of any case are to be determined by that particular case; the law is general and governs all cases. In the case at bar defendant did not rely on the unwritten law. All he wanted was a broad field and no favor.

He was entitled to have the jury pass on the facts whether Dr. Nicholson uttered the alleged slanderous reports; whether they were true or false; whether Dr. Nicholson was without fault in uttering the slanderous reports; whether he uttered them or not; whether the defendant was within his rights in asking Nicholson about them; whether his conduct was such as was calculated to bring on the difficulty. Ordinarily a jury can be relied on to find the facts and do justice when the Court gives them the law correctly. Judge Evans charged the law of self-defense first, contrary to the usual practice, but he had a right to do this. But by injecting in his charge the unwritten law, which was not relied on, and the Act of 1912, he prejudiced the defendant, and from his whole charge the inference was drawn that he brought on the difficulty by accosting Nicholson at the time of the fatal affray; withdrawing from the jury the question whether or not Nicholson, by starting

the alleged slander of the fair name and good character of the women, was in fault in bringing on the difficulty.

I think throughout the trial his Honor was in error, and I think the judgment should be reversed and a new trial granted.